# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA,** | * | |
| v. | * | **CRIMINAL NO. JKB-16-00363** |
| **GERALD THOMAS JOHNSON, et al.,** | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM**

Defendant Kenneth Faison is charged with conspiring to participate in a racketeering enterprise and conspiring to distribute controlled substances in violation of 18 U.S.C. § 1962(d) and 21 U.S.C. §§ 841(a)(1), (b)(1)(A), & 846.[1] Now pending before the Court is Defendant's Motion to Preclude Admission into Evidence of Defendant's Guilty Pleas in State Court. (ECF No. 178.) Defendant Joseph Bonds has moved to adopt Faison's arguments and to exclude his own prior state court guilty pleas. (ECF No. 184.) The issues have been briefed (ECF Nos. 178-1, 237, & 259), and no hearing is required because no facts are in dispute, *see* Local Rule 207 (D. Md. 2016). For the reasons explained below, Defendants' motions will be DENIED.

## *I. Background*

On January 12, 2015, Faison pled guilty to three counts of a six-count indictment in Baltimore City Circuit Court Case No. 11331024. Specifically, he pled guilty to one count of criminal gang activity, in violation of Md. Code Ann., Criminal Law, § 9-804(a), and two

---

[1] The original Indictment named only Defendant Gerald Johnson and issued on July 13, 2016. (ECF No. 9.) The First Superseding Indictment, which named Defendant Faison, among others, issued on November 9, 2016 (ECF No. 40.) The Second Superseding Indictment, which charges Defendant Faison with the same offense as the First Superseding Indictment, issued on September 20, 2017. (ECF No. 260.)

separate counts of assault with a handgun, in violation of Md. Code Ann., Criminal Law, § 4-204. On October 19, 2015, Bonds pled guilty to one count of a nine-count indictment in Baltimore City Circuit Court Case No. 113310044. Specifically, Bonds pled guilty to one count of criminal gang activity, in violation of Md. Code Ann., Criminal Law, § 9-804(a). On the same day, Bonds also pled guilty to one count of an 11-count indictment in Baltimore City Circuit Court Case No. 11323002. In that case, Bonds pled guilty to one count of possessing a firearm after being convicted of a controlled substance offense, in violation of Md. Code Ann., Criminal Law, § 5-622(b).

The conduct underlying Faison's state guilty plea is largely the same conduct he is charged with in the instant indictment. Indeed, in pleading guilty to criminal gang activity in state court, Faison admitted to being a member of the Black Guerilla Family Greenmount Regime, the enterprise he is accused of belonging to in the Second Superseding Indictment. Moreover, many of the overt acts that the government alleges in support of its Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy charge are the same overt acts Faison pled guilty to in state court.[2]

## II. Analysis

Faison moves to preclude the government from admitting into evidence his state court guilty plea. He contends that his guilty plea is inadmissible under Federal Rules of Evidence 402 and 403 because it was not made knowingly and voluntarily as required by the Constitution.[3]

---

[2] Defendant Bonds did not include his state court indictment as an exhibit with his motion to adopt the arguments put forth by Defendant Faison. However, because the Court's decision ultimately does not turn on the similarity of the acts alleged in the state and federal indictments, Defendant Bonds's argument is not prejudiced by his failure to include information regarding the details of his state court guilty pleas.

[3] Federal Rule of Evidence 402 provides that relevant evidence is admissible unless doing so would violate, *inter alia*, the Constitution. *See* Fed. R. Evid. 402. Federal Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Faison contends that a constitutionally invalid plea may not be admitted under the plain terms of

2

Faison contends that his guilty plea is constitutionally invalid because his counsel failed to provide effective assistance during his plea negotiations as required by the Sixth Amendment. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (holding that Sixth Amendment right to counsel extends to plea process and that two-part *Strickland v. Washington* test applies). More specifically, Faison contends that his state counsel was ineffective because counsel failed to adequately advise Faison of the consequences of his guilty plea—namely, that it could be used against him to obtain a subsequent federal conviction.[4] The government contends that Faison's guilty plea is valid and therefore admissible under Federal Rule of Evidence 801(d)(2)(A) (admission by a party-opponent). *See United States v. Ayala*, 601 F.3d 256, 269 (4th Cir. 2010) (affirming district court's admission of state court guilty plea in federal RICO prosecution under Federal Rule of Evidence 801(d)(2)(A) as an admission by a party-opponent); *United States v. Maestas*, 941 F.2d 273, 278 (5th Cir. 1991) ("It is well settled that a guilty plea is admissible in a subsequent collateral criminal trial as evidence of an admission by a party-opponent.").

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Generally, this means that "a defendant must be informed of the 'direct' but not the 'collateral' consequences of the plea." *Ayala*, 601 F.3d at 269. Indeed, every federal court of appeals to have considered the scope of the Sixth Amendment right to effective assistance of counsel in

---

Rule 402 and may not be admitted under Rule 403 because any probative value it offers would be substantially outweighed by unfair prejudice.

[4] Faison suggests at one point that he is advancing two "alternat[ive]" theories under which his guilty plea is invalid. (ECF No. 178-1 at 8.) Read generously, those two arguments appear to be that his plea is invalid, and therefore inadmissible, because (1) it was not knowing and voluntary, and (2) he received ineffective assistance of counsel during the plea process. However, the only support he offers for his contention that his plea was not knowing and voluntary is that his counsel failed to advise him of the consequences of the plea. Thus, his "alternat[ive]" theories collapse in on each other.

3

plea negotiations has concluded "that 'counsel's failure to inform a defendant of the collateral consequences of a guilty plea is *never*' a violation of the Sixth Amendment." *Chaidez v. United States*, 568 U.S. 342, 350 (2013) (emphasis added) (quoting *Santos-Sanchez v. United States*, 548 F.3d 327, 334 (5th Cir. 2008)). And the Fourth Circuit has unequivocally stated that "[w]hether a guilty plea in state court might be used in a subsequent federal prosecution is plainly a collateral consequence." *Ayala*, 601 F.3d at 270. In light of this *still valid and controlling* precedent, the Court would be hard pressed to grant Faison's motion.[5]

Faison correctly notes, however, that the bright-line distinction between direct and collateral consequences of a guilty plea has, at least arguably, been called into doubt recently by the Supreme Court. In *Padilla v. Kentucky*, the Supreme Court reversed the Supreme Court of Kentucky which had held—consistent with almost all other state and federal courts at the time—that the Sixth Amendment right to effective assistance of counsel simply was not applicable to "advice about deportation because it is merely a 'collateral' consequence of . . . conviction." 559 U.S. 356, 359–60 (2010). *Padilla* forced the Supreme Court to address "a threshold question: Was advice about deportation 'categorically removed' from the scope of the Sixth Amendment right to counsel because it involved only a 'collateral consequence' of a conviction, rather than a

---

[5] Indeed, the government essentially argues as much, suggesting that *Ayala* entirely forecloses Faison's argument. *Ayala* is not dispositive for at least two reasons, however. First, as explained *infra*, the Supreme Court's holding in *Padilla*, as interpreted by the Supreme Court in *Chaidez*, at least raises some doubt about whether it is appropriate for courts to rely *solely* on the direct-collateral distinction in assessing counsel's advice regarding a guilty plea. Second, although *Ayala* is persuasive and relevant insofar as it clearly provides that potential federal prosecution and conviction is a collateral consequence of a state guilty plea, the defendant in *Ayala* apparently did not attack the validity of his plea on Sixth Amendment grounds, and therefore *Ayala* does not, ***by itself***, foreclose Faison's argument. Indeed, the "Sixth Amendment responsibilities of counsel to advise of the advantages and disadvantages of a guilty plea are greater than the responsibilities of a court under the Fifth Amendment." *United States v. Youngs*, 687 F.3d 56, 62 (2d Cir. 2012). In other words, *Ayala* does not ***dictate*** the result here, but it is undoubtedly still valid and persuasive authority on the issue before the Court.

4

component of the criminal sentence?"[6] *Chaidez*, 568 U.S. at 349 (quoting *Padilla*, 559 U.S. at 366). In answering that question, the Court first noted that it had "never applied a distinction between direct and collateral consequences to define the scope of" the Sixth Amendment right to counsel, and therefore it was not bound to affirm the state court based on the seemingly collateral nature of deportation. *Padilla*, 559 U.S. at 365. The Court then ***expressly declined*** to consider the appropriateness of the widely-adopted direct-collateral distinction. Rather, the Court concluded that, "however apt that distinction might be in other contexts," *Chaidez*, 568 U.S. at 352, due to "the unique nature of deportation," the "collateral versus direct distinction [wa]s . . . ill suited to evaluating a *Strickland* claim concerning ***the specific risk of deportation***." *Padilla*, 559 U.S. at 366 (emphasis added); *see also United States v. Chan*, 792 F.3d 1151, 1155 (9th Cir. 2015) (noting that Supreme Court in *Padilla* "reject[ed] the direct/collateral consequence distinction, declining to label deportation as either and, instead, identifying it as 'unique'"). Accordingly, the Court held that advice about *deportation* as a potential consequence of a guilty plea is not "categorically removed" from the scope of the Sixth Amendment but, in declining to address the direct-collateral distinction more broadly, it generally left unaltered the plethora of lower court precedent applying the distinction in other contexts. *See United States v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012) ("Although the Supreme Court declined to apply this distinction to deportation in *Padilla*, it was also careful to note that it would not answer whether the distinction was an appropriate one for other ineffective assistance of counsel claims."); *see also United States v. Nicholson*, 676 F.3d 376, 382 (4th Cir. 2012) ("In *Padilla*, the Court . . . . specifically declined to address 'how to distinguish between direct and collateral consequences' of a guilty plea." (quoting *Padilla*, 559 U.S. at 364 n.8));

---

[6] "In other words, prior to asking *how* the *Strickland* test applied ('Did this attorney act unreasonably?'), *Padilla* asked *whether* the *Strickland* test applied ('Should we even evaluate if this attorney acted unreasonably?')." *Chaidez*, 568 U.S. at 349.

5

*Reeves*, 695 F.3d at 640 ("*Padilla* is rife with indications that the Supreme Court meant to limit its scope to the context of deportation only.").

Three years after *Padilla* the Supreme Court revisited its decision and held that *Padilla* had announced a "new rule" under *Teague v. Lane*, 489 U.S. 288 (1989), and therefore did not apply to cases pending on collateral review. *Chaidez*, 568 U.S. 342. Although the retroactivity of Padilla is not at issue here, the Supreme Court's subsequent analysis of *Padilla* provides particularly useful guidance in determining the scope of *Padilla*'s holding. Notably, some language in *Chaidez* could be read to call into doubt the direct-collateral distinction more broadly than *Padilla* itself seemed to—i.e., beyond the immigration context. For instance, the Supreme Court noted that in deciding *Padilla* it "answered a question about the Sixth Amendment's reach that [it] had left open," and that answer "altered the law of most jurisdictions." *Id*. at 352. The Supreme Court went on to note that *Padilla* "breach[ed] the previously chink-free wall between direct and collateral consequences" and "rejected th[e] categorical approach" adopted by lower federal courts. *Id.* at 352–53. These statements, taken out of context, could be read to support Faison's argument that "[a]ny material distinction between 'direct' and 'collateral' consequences from a guilty plea for *Strickland* purposes was eliminated by the *Padilla* decision." (ECF No. 178 at 4 n.3. Yet, *Chaidez* also reaffirmed the "unique" nature of deportation and certainly did not offer a wholesale rejection of the direct-collateral distinction. *Chaidez*, 568 U.S. at 352–53. Indeed, even following *Chaidez* federal courts have consistently interpreted *Padilla* narrowly and reaffirmed the continuing vitality of the direct-collateral distinction outside the context of deportation. *See Parrino v. United States*, 655 F. App'x 399, 403 (6th Cir. 2016) ("The holding in *Padilla* was limited to advice 'concerning the specific risk of deportation . . . .'" (quoting *Padilla*, 559 U.S. at 366)); *Johnson v. Ponton*, 780 F.3d 219, 225 (4th Cir. 2015) (describing

6

*Padilla* as holding that "counsel is ineffective where she fails to 'inform her client whether his plea carries a risk of deportation'"), *judgment vacated sub nom. Johnson v. Manis*, 136 S. Ct. 2443 (2016), *abrogated on other grounds by Montgomery v. Louisiana*, 136 S. Ct. 718 (2016); *Chavarria v. United States*, 739 F.3d 360, 362–63 (7th Cir. 2014) (holding that "[a] lawyer's advice about matters not involving the 'direct' consequences of a criminal conviction—collateral matters—is, in fact, irrelevant under the Sixth Amendment; such advice is categorically excluded from analysis as professionally incompetent, as measured by *Strickland*," and that "*Padilla* departed from this direct-collateral distinction [only] because of the 'unique' nature of deportation"); *Santiago v. Laclair*, 588 F. App'x 1, 4 (2d Cir. 2014) ("*Padilla*'s narrow holding [was] limited specifically to the unique penalty of deportation . . . .").

In sum, *Padilla* and *Chaidez* establish that certain consequences, even though technically "collateral"—i.e., not "definite, immediate, and largely automatic," *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir. 1973)—may be so inextricably intertwined with the underlying criminal process, so severe, and so likely to result that notice of them must be included within the protective umbrella of the Sixth Amendment right to effective assistance counsel. To date, only one such consequence—deportation—has been identified. And while other unique collateral consequences may yet reveal themselves as within the scope of the Sixth Amendment, the possibility of a subsequent federal conviction based on the same conduct underlying a state guilty plea is not such a consequence.

Simply put, the "plainly . . . collateral consequence," *Ayala*, 601 F.3d at 270, at issue here is not remotely similar in kind to the unique consequence that justified the narrow exception recognized in *Padilla*. Deportation is "a particularly severe 'penalty'" that is "intimately related to the criminal process" and "nearly an automatic result for a broad class of noncitizen

7

offenders." *Padilla*, 559 U.S. at 365–66. Given its near inevitability following a conviction for specified crimes, "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to [those] crimes." *Padilla*, 559 U.S. at 364. By contrast, a federal conviction does not inextricably flow from a state guilty plea. *See Ayala*, 601 F.3d at 270 ("In our system of dual sovereigns, state and federal courts run on separate tracks; thus, a guilty plea in one does not *automatically* lead to consequences in the other." (emphasis added)). Both in general and in the specific circumstances present here, an underlying state conviction is neither necessary nor sufficient to secure a federal conviction, rather, it is but one ingredient that *may* be used by the government *if* it decides to prosecute the defendant under federal law. In *Padilla*, however, the defendant's guilty plea (i.e., conviction) *was* both necessary and sufficient to impose the consequence of deportation.[7] *See Padilla*, 559 U.S. at 373 (noting that defendant's offense of conviction "automatically trigger[ed] the removal consequence"); *see also* 8 U.S.C. § 1227(a)(2)(B) ("Any alien who . . . has been convicted of a [controlled substance offense] *is deportable*." (emphasis added)).

Moreover, a federal conviction is not "intimately related to the [underlying] criminal process," *id.* at 365, that resulted in the state guilty plea, but instead is the ultimate result of an independent criminal process subject to its own set of constitutional protections. In this regard, the consequence at issue here stands in particularly stark contrast to the consequence at issue in *Padilla*. Removal proceedings are civil rather than criminal, and therefore they do not come with all of the attendant protections a defendant is afforded in a federal criminal prosecution. In particular, the Sixth Amendment rights to effective assistance of counsel, trial by jury, and

---

[7] Conviction of a removable offense triggers administrative removal proceedings under 8 U.S.C. § 1229. The conviction was sufficient in that it alone was enough to warrant deportation if established by clear and convincing evidence before an immigration judge.

8

compulsory process for obtaining favorable witnesses do not extend to civil removal proceedings.[8] *See Prudencio v. Holder*, 669 F.3d 472, 490 (4th Cir. 2012). Moreover, the government must prove its case only by clear and convincing evidence. *See* 8 U.S.C. § 1229a(c)(3). Here, however, Faison and Bonds have already been provided counsel and will be afforded the right to a jury trial and compulsory process for obtaining witnesses in their favor should they so choose, and the government must prove its case beyond a reasonable doubt.

Accordingly, the Court concludes that, even in the wake of *Padilla*, the possibility of a future federal conviction (or prosecution) following a state court guilty plea is a collateral consequence, and therefore it is not within the "scope of constitutionally 'reasonable professional assistance' required under *Strickland*," *Padilla*, 559 U.S. at 365. The Court does not reach this conclusion lightly. Indeed, the circumstances present in this case highlight the potentially severe collateral consequences that may result, at least in part, from a guilty plea. However, the potential for such consequences, and a multitude of other collateral issues not raised by the present motion, is an inherent aspect of pleading guilty to serious criminal conduct. And, under controlling precedent, such collateral consequences are simply too remote and too far removed from the underlying criminal proceedings to be included within the ambit of the Sixth Amendment right to effective assistance of counsel.

*V. Conclusion*

For the foregoing reasons, an order shall enter DENYING Defendant Faison's Motion to Preclude Admission into Evidence of Defendant's Guilty Pleas in State Court. (ECF No. 178.) Defendant Bonds's Motion to Adopt Motion Filed by Co-Defendant (ECF No. 184) will be GRANTED, but the relief sought therein will be DENIED for the reasons stated above.

---

[8] The statute governing removal proceedings does provide a constricted version of some of these rights. *See* 8 U.S.C. § 1229a(b)(4) (providing for "privilege of being represented, at no expense to the Government, by counsel" and right "to cross-examine witnesses presented by the Government").

DATED this 25th day of September, 2017.

                        BY THE COURT:

                        _____/s/_____
                        James K. Bredar
                        United States District Judge